# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

TIMOTHY SCHULER,
    Petitioner,

vs.

STUART HUDSON,
WARDEN,
    Respondent.

Civil Action No. 1:08-cv-456

Barrett, J.
Hogan, M.J.

**REPORT AND
RECOMMENDATION**

Petitioner, a state prisoner, brings this case *pro se* seeking a Writ of Habeas Corpus

pursuant to 28 U.S.C. § 2254. This matter is before the Court on the petition (Doc. 1),

respondent's return of writ and exhibits thereto (Doc. 8), and petitioner's traverse. (Doc. 12).

## I. FACTS

This case involves the following facts, as summarized by the First District Ohio Court of

Appeals:[1]

> * * * Schuler is the adopted son of the victim's uncle. The victim testified that,
> on October 20, 2005, around 4:00 p.m., Schuler had come to her apartment and
> had asked to use her phone. When she went into her bedroom to stop running a
> movie that she had been watching, Schuler followed her into the room, removed
> his clothing, and removed her clothing. The victim testified that Schuler then
> forced her to have intercourse with him.
>
> The victim's half-brother, Tony Schuler, testified that the victim had been born
> with fetal-alcohol syndrome, that she was mentally retarded, and that she
> functioned at the level of a nine-year-old child. Tony stated that he had acted as
> the caregiver for his half-sister after his father had died in January 2005. He was
> the payee for her social-security benefits. According to Tony, he had seen Schuler
> in the victim's apartment on October 12. Because he believed that Schuler was a

---

[1] The factual findings of the state appellate court are entitled to a presumption of correctness in the absence
of clear and convincing evidence to the contrary. 28 U.S.C. § 2254(e)(1); *see McAdoo v. Elo*, 365 F.3d 487, 493-94
(6th Cir. 2004).

manipulator who took advantage of people, Tony told Schuler not to contact the victim. Nearly a week later, on October 20, the victim called Tony around 6:00 p.m. Tony testified that the victim was crying, and that he knew something was wrong. When he got to the victim's apartment, she was still crying and was very emotional. The victim managed to tell Tony that Schuler had been in her apartment. Tony took her to the Greenhills police station and told officers that he suspected that a rape had occurred.

The victim recounted the story to the police officers. She was then taken to a hospital where a rape examination was conducted. The examination revealed a laceration consistent with vaginal penetration, but no bodily fluid from Schuler was recovered from the victim's body. The victim told Sergeant Timothy Roberts that Schuler had wiped his body with a blue towel after he had completed intercourse. Roberts recovered a towel that matched the victim's description from the victim's apartment. The towel contained sperm from Schuler.

When Roberts questioned him, Schuler denied that he had had sexual intercourse with the victim. During his interview with Roberts, Schuler indicated that the victim was his cousin, and that she was "socially handicapped." He later told Roberts that he believed that the victim functioned at sixth-grade level at best. The state also presented the testimony of Tami Gasper, who was a case manager for the Hamilton County Board of Mental Retardation and Developmental Disability. According to Gasper, she had recently been assigned to oversee the victim's welfare. Gasper stated that her records indicated that the victim had mild to moderate retardation.

Schuler testified on his own behalf. He stated that the victim had visited him several times at work, and that he had had consensual intercourse with the victim on October 12. He stated that when he was interviewed by Roberts, he had denied having had intercourse with the victim because he was embarrassed that she was his cousin. Joan Schuler, who is the aunt of both Schuler and the victim, testified that the victim was emotionally retarded. But according to Joan Schuler, the victim was a good talker and knew the difference between right and wrong.

(Doc. 8, Exhibit 7 at 2-3).


## II. PROCEDURAL HISTORY[2]

---

[2] Petitioner agrees with respondent's presentation of the procedural history in this action. (Doc. 12 at 3). Accordingly, the Court adopts the procedural history presented in the return of writ. (Doc. 8 at 3-5).

2

## STATE CONVICTION

On October 31, 2005, Schuler was indicted by the Hamilton County Grand Jury on two

counts of rape, both felonies of the first degree, in Hamilton County Common Pleas Court Case

Number B 0510554. (Doc. 8, Exhibit 1). The indictment alleged two different theories of

criminal liability for one act. Count One alleged that Schuler compelled the victim to submit to

sexual conduct by force or threat of force in violation of Ohio Revised Code § 2907.02(A)(2).

(Doc. 8, Exhibit 1). Count Two alleged Schuler engaged in sexual conduct with the victim when

Schuler knew or had reasonable cause to believe that the victim's ability to resist or consent was

substantially impaired due to a mental or physical condition, a violation of O.R.C. §

2907.02(A)(1)(c). (Doc. 8, Exhibit 1).

After waiving a trial by jury, Schuler was tried before the court on June 26-29, 2006. On

June 29, 2006, while represented by counsel, Schuler was acquitted of Count One, the forcible

rape (Doc. 8, Exhibit 2), but found guilty of Count Two, sexual conduct with the victim when

Schuler knew or had reasonable cause to believe that the victim's ability to resist or consent was

substantially impaired due to a mental or physical condition. (Doc. 8, Exhibit 3).

On September 20, 2006, the trial court held a sentencing hearing. The trial court

sentenced Schuler to nine years in prison. (Doc. 8, Exhibit 3). The court also found Schuler to be

a sexual predator.

## DIRECT APPEAL

On October 16, 2006, Schuler, through counsel, filed a notice of appeal to the First

District Court of Appeals. (Doc. 8, Exhibit 4). Schuler's appeal was assigned case number C-

060864. On April 27, 2007, counsel for Schuler filed a brief and raised the following

3

assignments of error:

> 1. The trial court erred to the prejudice of the Defendant-Appellant in determining him to be a sexual predator pursuant O.R.C. § 2950.09.

> 2. The State failed to prove each and every element of the offense of rape beyond a reasonable doubt.

(Doc. 8, Exhibit 5). The State filed an opposition brief on June 1, 2007. (Doc. 8, Exhibit 6). On

October 31, 2007, the Court of Appeals affirmed the court's designation of Schuler as a sexual

predator and the court's decision finding defendant guilty of count two. (Doc. 8, Exhibit 7).

Schuler appealed to the Ohio Supreme Court, citing two Propositions of Law:

> 1. The trial court erred to the prejudice of the Defendant-Appellant in determining him to be a sexual predator pursuant O.R.C. § 2950.09.

> 2. The State failed to prove each and every element of the offense of rape beyond a reasonable doubt.

(Doc. 8, Exhibit 9). The State waived the opportunity to file a Memorandum in Response. (Doc.

8, Exhibit 10). On April 15, 2008, the Supreme Court denied leave to appeal. (Doc. 8, Exhibit

11).

## FEDERAL HABEAS CORPUS

Schuler, pro se, filed the instant petition for a writ of habeas corpus on June 12, 2008, and

asserted the following grounds for relief:

**GROUND ONE**: The Petitioner was convicted with insufficient evidence to support the charged offense, the State of Ohio did not prove every essential element- Due Process violation- the Statute charged is unconstitutional.

Supporting Facts: The State of Ohio does not categorize, or define, what exactly "Substantial impairment" is, what constitutes a substantial impairment, or the extent of "Substantial Impairment" a[n] alleged victim, or Defendant must be aware of that the alleged victim is "Substantially Impaired." In the case sub judice the alleged victim was never proven to be "substantially impaired" she functioned

4

on her own, lived alone, shopped for her own groceries, and was pregnant with two children, raised those same children until she was sick with a liver infection and had to give up custody of those children, the children were not taken because of any mental disability. The alleged victim was not confined to a state ran home or Center therefore, the alleged victim's ability to resist or consent was not impaired, and she voluntarily had consensual sex with Defendant.

**GROUND TWO**: The State Court erred and prejudiced the Petitioner when it found, without clear and convincing evidence, that the Petitioner was a sexual predator, thereby denying the Petitioner Due Process Equal Protection.

Supporting Facts: Based upon the existing record the Trial Court denied the Petitioner's right to Due process and Equal Protection when the Court found the Petitioner to be a sexual predator based upon insufficient evidence of a clear and convincing standard. There was only one victim in this case. She was 22 years old and the Petitioner was 27, there was no alcohol or drugs used to impair the victim, the petitioner has no prior sexual offense convictions, petitioner has no mental or physical defects and he did not show a pattern of abuse as it relates to this victim. However, the Court found that somehow the petitioner displayed cruelty to the victim. The cruelty finding is refuted by the record, no physical or mental abuse was committed upon the victim at the time of the alleged offense, just because the victim changed her mind and thought the sex was nasty is insufficient.

(Doc. 1, petition).

### III. STANDARD OF REVIEW

On federal habeas review, the factual findings of the state appellate court are entitled to a presumption of correctness in the absence of clear and convincing evidence to the contrary. 28 U.S.C. § 2254(e)(1). *See McAdoo v. Elo*, 365 F.3d 487, 493-94 (6th Cir. 2004); *Mitzel v. Tate*, 267 F.3d 524, 530 (6th Cir. 2001). This Court is bound by the state court adjudications unless those decisions are contrary to or an unreasonable application of clearly established federal law. *Franklin v. Francis*, 144 F.3d 429, 433 (6th Cir. 1998).

Under the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104- 132, 110 Stat. 1214 ("AEDPA"), a writ of habeas corpus may not issue with respect to any claim

adjudicated on the merits in state court unless the adjudication either:

> 1. resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> 2. resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

> The phrases "contrary to" and "unreasonable application" have independent meanings:
>
> A federal habeas court may issue the writ under the 'contrary to' clause if the state court applies a rule different from the law set forth in . . . [Supreme Court] cases, or if it decides a case differently that we have done on a set of materially indistinguishable facts. The court may grant relief under the 'unreasonable application' clause if the state court correctly identifies the governing legal principle from . . . [the Supreme Court's] decisions but unreasonably applies it to the facts of a particular case. The focus on the latter inquiry is whether the state court's application of clearly established federal law is objectively unreasonable . . . . and an unreasonable application is different from an incorrect one.

*Bell v. Cone*, 535 U.S. 685, 694 (2002)(citation omitted).

However, if a state court does not articulate the reasoning behind its decision or fails to adjudicate the constitutional issues, the AEDPA deferential standard of review set forth in section 2254(d) is inapplicable. *See Wiggins v. Smith,* 539 U.S. 510, 534 (2003); *Towns v. Smith*, 395 F.3d 251, 257 (6th Cir. 2005); *see also Clinkscale v. Carter*, 375 F.3d 430, 436 (6th Cir. 2004) (citing *Maples v. Stegall*, 340 F.3d 433, 436 (6th Cir. 2003) ("Where as here, the state court did not assess the merits of a claim properly raised in a habeas petition, the deference due under AEDPA does not apply.")). Under these circumstances, the constitutional claim is reviewed *de novo* and the Court considers "the totality of the evidence-'both that adduced at trial, and the evidence adduced in the habeas proceeding[s].'" *Wiggins,* 539 U.S. at 536 (emphasis in

6

the original) (quoting *Williams v. Taylor,* 529 U.S. 362, 397-98 (2000)). *Accord Clinkscale,* 375
F.3d at 436.

## IV. GROUND ONE OF THE PETITION IS WITHOUT MERIT.

Petitioner's first ground for relief asserts there was insufficient evidence to support his
rape conviction.

The Due Process Clause of the Fourteenth Amendment protects a defendant in a criminal
case from conviction except upon proof beyond a reasonable doubt of every fact necessary to
constitute the crime with which he or she is charged. *Jackson v. Virginia*, 443 U.S. 307, 316
(1979); *In re Winship,* 397 U.S. 358, 364 (1970). In analyzing claims of insufficient evidence,
the Court must determine whether "after viewing the evidence in the light most favorable to the
prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond
a reasonable doubt." *Jackson*, 443 U.S. at 319 (emphasis in original). This standard reserves to
the trier of fact the responsibility to resolve conflicts in testimony, to weigh the evidence, and to
draw reasonable inferences from the basic facts to the ultimate facts. *Id.* at 318-319.

On habeas corpus review, the federal court conducts an independent review of the state
court record in analyzing petitioner's sufficiency of the evidence claim. *Nash v. Eberlin*, 437
F.3d 519, 525 (6th Cir. 2006). However, the Court "does not reweigh the evidence or
redetermine the credibility of the witnesses whose demeanor has been observed by the trial
court." *Matthews v. Abramajtys*, 319 F.3d 780, 788 (6th Cir. 2003) (citing *Marshall v.
Lonberger*, 459 U.S. 422, 434 (1983)). "*Jackson* makes clear that 'a federal habeas corpus court
faced with a record of historical facts that supports conflicting inferences must presume-even if it
does not affirmatively appear in the record-that the trier of fact resolved any such conflicts in

7

favor of the prosecution, and must defer to that resolution.'" *O'Hara v. Brigano,* 499 F.3d 492,

499 (6th Cir. 2007) (citing *Jackson,* 443 U.S. at 326). In addition, circumstantial evidence may

be sufficient to support a conviction and such evidence need not remove every reasonable

hypothesis except that of guilt. *See Jackson,* 443 U.S. at 326; *Walker v. Russell,* 57 F.3d 472,

475 (6th Cir. 1995); *Jamison v. Collins,* 100 F. Supp.2d 647, 705 (S.D. Ohio 2000), *aff'd,* 291

F.3d 380 (6th Cir. 2002). "The mere existence of sufficient evidence to convict therefore defeats

a petitioner's claim." *Matthews,* 319 F.3d at 788.

In the instant case, petitioner asserts there was insufficient evidence to show that the

victim was "substantially impaired" to support the charged rape offense and that the statute is

void for vagueness because it does not define "substantial impairment" and does not give

adequate notice of the conduct prohibited by the law. (Doc. 12 at 4-18).

The First District Court of Appeals overruled petitioner's insufficiency of evidence claim

as follows:

> ***Schuler asserts that the state failed to prove every element of rape beyond a
> reasonable doubt. Schuler challenges both the sufficiency and the weight of the
> evidence. When an appellant challenges the sufficiency of evidence, we must
> determine whether the state presented adequate evidence on each element of the
> offense.[2] On the other hand, when reviewing whether a judgment is against the
> manifest weight of the evidence, we must determine whether the trier of fact
> clearly lost its way and created a manifest miscarriage of justice.[3]
>
> > Fn. 2. See *State v. Thompkins,* 78 Ohio St.3d 380, 386, 1997-Ohio-
> > 52, 678 N.E.2d 541.
> >
> > Fn. 3. See *id.* at 387.
>
> A person is guilty of rape under R.C. 2907.02(A)(1)(c) if he "engage[s] in sexual
> conduct with another who is not [his] spouse * * *, when * * * [t]he other
> person's ability to resist or consent is substantially impaired because of a mental
> or physical condition * * *, and the offender knows or has reasonable cause to

8

believe that the other person's ability to resist or consent is substantially impaired because of a mental or physical condition[.]"

Schuler argues that the state did not present sufficient evidence that the victim was "substantially impaired." The state need not present expert testimony that the victim was substantially impaired.[4] "[R]ather, [substantial impairment] can be shown to exist by the testimony of people who have interacted with the victim, and by allowing the trier of fact to do its own assessment of the person's ability to appraise or control * * * her conduct."[5]

> Fn. 4. *State v. Robinson*, 9th Dist. No. 21317, 2003-Ohio-5360, ¶10.
>
> Fn. 5. *Id*.

We conclude that the state presented sufficient evidence of every element of the offense, including the victim's substantial impairment and Schuler's knowledge of her impairment. The court was also able to observe the victim as she testified, to weigh the testimony of Tony, Joan Schuler, and Gasper about the victim's mental capabilities, and to hear Schuler's statements about the victim's mental capabilities. We conclude that the trial court's findings that the victim was substantially impaired and that Schuler knew or had reasonable cause to believe that the victim was substantially impaired were not against the manifest weight of the evidence. And we further conclude that the trial court did not lose its way when it found Schuler guilty of rape in violation of R.C. 2907.02(A)(1)(c).

(Doc. 8, Exh. 7 at 3-5).

Petitioner argues there was insufficient evidence from which the trial judge could conclude beyond a reasonable doubt that the victim was "substantially impaired" for purposes of the rape offense. Petitioner argues that the victim was not receiving assisted care, was fully functional, already had two children, cared for herself and her household, shopped for herself, and answered questions at trial accurately and concisely. (Doc. 12 at 4-5). The only countervailing evidence was that she received SSI Disability benefits for Fetal Alcohol Syndrome and that her brother stated she "acts like a nine (9) year old." (Doc. 12 at 5). Petitioner argues that in light of the fact that the victim already had two children, lived independently, ran

9

her own household, and showed no physical signs of impairment with he spoke with her, he could not have reasonably believed the victim's ability to resist or consent was substantially impaired by a physical or mental condition.

To establish the elements of the offense of rape under Ohio Rev. Code § 2907.02(A)(1)(c), the State must show: (1) the defendant engaged in sexual conduct with a person not his spouse; (2) the other person's ability to resist or consent is substantially impaired because of a mental or physical condition; and (3) the defendant knows or has reasonable cause to believe that the other person's ability to resist or consent is substantially impaired because of a mental or physical condition. Petitioner asserts there was insufficient evidence showing the victim was substantially impaired by a mental condition in this case.

"Substantially impaired" is not defined in the Ohio statute and "must be given the meaning generally understood in common usage." *State v. Zeh*, 31 Ohio St.3d 99, 104, 509 N.E.2d 414, 418 (1987). The Ohio Supreme Court has determined that "substantial impairment must be established by demonstrating a present reduction, diminution or decrease in the victim's ability, either to appraise the nature of his conduct or to control his conduct. This is distinguishable from a general deficit in ability to cope, which condition might be inferred from or evidenced by a general intelligence or I.Q. report." *Zeh,* 31 Ohio St.3d at 103-104, 509 N.E.2d at 418. "[I]t is sufficient for the state to establish substantial impairment by offering evidence at trial establishing a reduction or decrease in the victim's ability to act or think." *State v. Doss,* 2008 WL 323168, *3 (Ohio App. 8th Dist. 2008). "'Substantial impairment' need not be proven by expert medical testimony; it may be proven by the testimony of persons who have had some interaction with the victim and by permitting the trier of fact to obtain its own assessment of the

10

victim's ability to either appraise or control her conduct." *State v. Dorsey*, No. 2007-CA-091, 2008 WL 2571851, at \*7 (Ohio App. 5th Dist. May, 23, 2008) (quoting *State v. Brady*, No. 87854, 2007 WL 926365, \*9 (Ohio App. 8th Dist. March 29, 2007) and citing *State v. Jordan*, No. 06 HA 586, 2007 WL 1880029 (Ohio App. 7th Dist. June 22, 2007)). *See also State v. Hogan*, No. 09-CA-33, 2009 WL 2894578, at \*4 (Ohio App. 5th Dist. Sept. 8, 2009); *State v. Hillock*, No. 02-538-CA, 2002 WL 31812871 (Ohio App. 7th Dist. Dec. 13, 2002)).

As to whether the State proved that the victim's ability to resist or consent was substantially impaired by a mental condition, the following testimony is relevant. The victim testified that she is 23 years old, is single, and lives alone. (Doc. 8, Tr. 29, 94). She receives Social Security disability benefits due to Fetal Alcohol Syndrome. (Tr. 31). She testified she has known petitioner "pretty much . . . all my life" and that she "grew up with him." (Doc. 8, Tr. 30). She testified that she lives alone. (Tr. 94). The victim testified that her brother is her payee for her social security disability benefits and that he pays the rent, buys her medicine for her, and takes her shopping. (Tr. 65, 95). She has two children who were removed from her care because of a "medical problem" and who have been adopted by others. (Tr. 95-96). She takes Zoloft for depression and Metformin for diabetes and takes her medication when she is supposed to. (Tr. 57, 94). She denied being consensually sexually active with petitioner and testified that on October 20, 2005, the date of the alleged rape, she told him "no" and that it was wrong because they were family. (Tr. 35-36, 48, 79). She testified that the previous week, her brother Tony told petitioner he was not allowed to be there. (Tr. 65).

Tami Gasper, a case manager from the Hamilton County Board of Mental Retardation and Developmental Disabilities, testified that the victim is assigned to her caseload and suffers

11

from mild to moderate mental retardation. (Tr. 99, 108-109).

Anthony Schuler, the victim's brother, testified that the victim was born with Fetal Alcohol Syndrome and functions "like nine years old, MR [mentally retarded]." (Tr. 117, 143). Prior to his death in January 2005, the victim's father was her caregiver. (Tr. 118). The victim's father was her payee for her social security disability benefits, and "did everything for her, fed her, clothed her and took her places." (Tr. 118). After his father's death, Anthony Schuler took over the responsibilities for the victim. He became the payee for her social security disability benefits. Anthony Schuler testified that he controls her money and pays her bills because she is not able to budget her money or spend it appropriately. (Tr. 119, 152, 154-55). He testified that she has been manipulated by others in the past and that he does not give her an allowance because other people have taken advantage of her. (Tr. 155, 162). He transports her to doctor appointments, the grocery store, and the laundry mat, and takes her shopping. (Tr. 119). He testified that while she selects her own food, he counsels her on food choices since she is a diabetic. (Tr. 132, 141). He also counsels her on her behavior and on how to take care of her apartment. (Tr. 132). He provides supervision for her and tells her what she should and should not do and has done so since their father's death in 2005. (Tr. 119). He testified that the victim is "not capable of ongoing cleanliness. I'm trying to get help with MRDD . . . to have someone involved because I'm not there 24/7." (Tr. 133). He also testified that he spoke with his sister at least once a day. (Tr. 164).

Anthony Schuler further testified that a week prior to the date in question, he was at the victim's house and encountered petitioner. He was concerned that petitioner was at the victim's house because he "didn't want him [petitioner] to take advantage of her in any way, monetarily

or any way in nature" based on petitioner's past history with other family members. (Tr. 127). He told petitioner to stop coming to the victim's house and to leave her alone. (Tr. 128, 140).

Joan Schuler, the aunt of both petitioner and the victim, testified that the victim was "emotionally retarded." (Tr. 280). She also testified that the victim was "a good talker" and "knows right from wrong." (Tr. 282).

During his interview with Sergeant Roberts, petitioner acknowledged that the victim was his cousin and that she was "socially handicapped." (Doc. 8, Exh. 7 at 2). Petitioner told Roberts that he believed that the victim functioned at a sixth-grade level at best. *Id.* Petitioner stated that while he knew the victim, over the last couple of years he only had contact with her three times. (Tr. 285). Petitioner testified that he and the victim had consensual sexual relations the week before October 20, 2005 at the instigation of the victim, but that they did not have sexual relations on October 20, 2005. (Tr. 295-98, 305-312).

Based on the above testimony, there was sufficient evidence from which the trial court could determine that the victim was mentally handicapped and that petitioner was aware of her mental condition. There was sufficient evidence from which the trial court could reasonably infer that the victim's ability to resist or consent was substantially impaired by her mental condition. The evidence showed the victim was born with Fetal Alcohol Syndrome, received Social Security disability benefits based thereon, and received supportive services from the Department of Mental Retardation. The evidence also showed the victim was mentally retarded and functioned like a nine year old. Although she was an adult, she was cared for by her father until his death in January 2005. Thereafter, her brother assisted her with her activities of daily living such as paying her bills, transportation, shopping, and decision-making. The victim was

13

unable to manage her own money and to care for her apartment. This evidence, viewed in the light most favorable to the prosecution, was sufficient such that any rational trier of fact could conclude beyond a reasonable doubt that the victim's mental condition substantially impaired her ability to consent or resist.

Petitioner argues that the victim's testimony that she told petitioner "no" shows she had the ability to resist his sexual advances. (Doc. 12 at 8). Petitioner's argument mistakenly equates the ability to resist with the ability to consent. Ohio Rev. Code § 2907.02(A)(1)(c) is written in the disjunctive, requiring a substantial impairment of either the ability to resist or the ability to consent. The sexual contact between petitioner and the victim is unlawful if the victim's "ability *to resist or consent* is substantially impaired because of a mental or physical condition." Ohio Rev. Code § 2907.02(A)(1)(c) (emphasis added). As explained by one court:

> Even a five-year-old child can resist sexual contact by verbalizing discomfort or the desire that the contact cease and by pulling away; the child's ability to resist, however, does not mean that the child has consented to the initial contact or even has the ability to do so. [The defendant] could still be found guilty provided the state proved that [the victim's] ability to appraise the nature of her conduct was diminished.

*State v. Novak*, No. 2003-L-077, 2005 WL 336337, at *4 (Ohio App. 11 Dist. Feb. 11, 2005). The fact that the victim verbally expressed her opposition to petitioner's advances does not mean she had the mental ability to consent to such advances.

There was also sufficient evidence from which the trial court could reasonably infer that petitioner had reasonable cause to believe or had knowledge of the victim's impaired ability to resist or consent. The evidence showed that petitioner and the victim were cousins, knew each other most of their lives, and had grown up together. Petitioner acknowledged that the victim

14

was "socially handicapped" and functioned at a six grade level at best. Although petitioner testified he had not seen the victim much between his release from prison and the alleged rape, the trial court had the opportunity to observe both the victim and petitioner when they testified and to assess their demeanor. The trial court was in the best position to evaluate the credibility of the witnesses and to weigh the evidence. *Jackson*, 443 U.S. at 318-319. Reasonable minds could conclude in light of the above evidence, coupled with the victim's demeanor, that petitioner was aware or should have known of the victim's cognitive limitations and that her capacity to resist or consent was substantially impaired. When viewed in the light most favorable to the prosecution, any rational trier of fact could have found beyond a reasonable doubt the essential elements that the victim was substantially impaired in her ability to consent to the sexual encounter and that petitioner knew or had reasonable cause to believe that the victim was so impaired. *Jackson*, 443 U.S. at 319. The Court concludes that the evidence was constitutionally sufficient to sustain petitioner's conviction and, therefore, Ground One of the petition is without merit and should be denied.

Petitioner also argues that Ohio Rev. Code § 2907.02(A)(1)(c) is unconstitutionally void for vagueness because it does not define "substantial impairment" and fails to give adequate notice of the conduct prohibited by the law.

Petitioner failed to raise this claim in the Ohio courts and therefore has procedurally defaulted this claim for relief. While "[p]rocedural default is not a jurisdictional bar to review on the merits," *Howard v. Bouchard*, 405 F.3d 459, 476 (6th Cir. 2005), *cert. denied*, 546 U.S. 1100 (2006) (citing *Trest v. Cain*, 522 U.S. 87, 89 (1997)), the Court may in its discretion raise the issue *sua sponte*. *See, e.g., Lorraine v. Coyle*, 291 F.3d 416, 426 (6th Cir. 2002) (and cases cited

15

therein), *cert. denied,* 538 U.S. 947 (2003); *Elzy v. United States,* 205 F.3d 882, 886 (6th Cir. 2000). Where a petitioner is afforded the opportunity to be heard on the matter before claims are dismissed on procedural default grounds, such as filing objections to a report and recommendation of the magistrate judge recommending a claim be deemed procedurally defaulted, the district court does not abuse its discretion in *sua sponte* raising the issue of procedural default. *See Palmer v. Bagley,* Nos. 06-3835, 06-3837, 2009 WL 1528503, at *11 (6th Cir. May 29, 2009). *See also Medina v. Wolfe,* No. 2:06cv921, 2007 WL 2323381, at *7 (S.D. Ohio Aug. 9, 2007) (Kemp, M.J.) (Report & Recommendation) (unpublished), *adopted,* 2007 WL 2907521 (S.D. Ohio Oct. 3, 2007) (Holschuh, J.) (unpublished); *Butts v. Sheets,* No. 2:05cv994, 2006 WL 2612896, at *10 (S.D. Ohio Aug. 10, 2006) (King, M.J.) (Report & Recommendation) (unpublished), *adopted,* 2006 WL 2612976 (S.D. Ohio Oct. 12, 2006) (Smith, J.) (unpublished), *aff'd,* 279 Fed. Appx. 354 (6th Cir. 2008). Petitioner may respond to this Court's procedural default analysis in his objections to the Report and Recommendation.

In recognition of the equal obligation of the state courts to protect the constitutional rights of criminal defendants, and in order to prevent needless friction between the state and federal courts, a state defendant with federal constitutional claims must first fairly present those claims to the state courts for consideration before raising them in a federal habeas corpus action. *See* 28 U.S.C. § 2254(b)(1), (c); *see also Anderson v. Harless,* 459 U.S. 4, 6 (1982) (*per curiam*); *Picard v. Connor,* 404 U.S. 270, 275-76 (1971). Federal courts may not consider "contentions of federal law that are not resolved on the merits in the state proceeding due to petitioner's failure to raise them as required by state procedure." *Wainwright v. Sykes,* 433 U.S. 72, 87 (1977). A constitutional claim for relief must be presented to the state's highest court in order to satisfy the

16

fair presentation requirement. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999); *Hafley v. Sowders*, 902 F.2d 480, 483 (6th Cir. 1990); *Leroy v. Marshall*, 757 F.2d 94, 97, 99-100 (6th Cir.), *cert. denied*, 474 U.S. 831 (1985). If the petitioner fails to do so, he may have waived the unraised claims for purposes of federal habeas corpus review. *See Weaver v. Foltz*, 888 F.2d 1097, 1099 (6th Cir. 1989).

In this case, petitioner failed to present the claim that Ohio Rev. Code § 2907.02(A)(1)(c) is void for vagueness to either the Ohio Court of Appeals or the Supreme Court of Ohio. Since petitioner had the opportunity to raise this claim on direct appeal but failed to do so, he has waived this claim under state procedural law.[3] *See Lordi v. Ishee*, 384 F.3d 189, 194 (6th Cir. 2004), *cert. denied*, 546 U.S. 821 (2005) (citing *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994)); *see also Buell v. Mitchell*, 274 F.3d 337, 349 (6th Cir. 2001). This is an adequate and independent state ground which forecloses this Court's review of the federal constitutional claim. *Id.* Therefore, petitioner has procedurally defaulted and waived this claim on habeas corpus review unless he can show cause for the procedural default and actual prejudice resulting from the alleged constitutional error, or that failure to consider the claim will result in a "fundamental miscarriage of justice." *Coleman v. Thompson,* 501 U.S. 722, 750 (1991); *see also Murray v. Carrier,* 477 U.S. 478, 485 (1986); *Engle v. Isaac,* 456 U.S. 107, 129 (1982); *Wainwright v. Sykes,* 433 U.S. 72, 87 (1977).

Petitioner has failed to demonstrate either cause for the procedural default of this claim

---

[3] "Under the doctrine of res judicata, a final judgment of conviction bars a convicted defendant who was represented by counsel from raising and litigating in any proceeding except an appeal from that judgment, any defense or any claimed lack of due process that was raised or could have been raised by the defendant at the trial, which resulted in that judgment of conviction, or on an appeal from that judgment." *State v. Perry*, 10 Ohio St.2d 175, 176, 226 N.E.2d 104, 106 (1967)(syllabus).

17

or actual prejudice resulting from the alleged constitutional violation. Nor has petitioner shown that if this claim is not considered on the merits a "fundamental miscarriage of justice" will occur, that is, that the alleged constitutional violations "probably resulted in the conviction of one who is actually innocent" of the crimes charged. *See Murray,* 477 U.S. at 495-96; *see also Schlup v. Delo,* 513 U.S. 298, 327 (1995); *cf. Souter v. Jones,* 395 F.3d 577, 597-602 (6th Cir. 2005). Accordingly, petitioner's claim that Ohio Rev. Code § 2907.02(A)(1)(c) is unconstitutionally void for vagueness is procedurally defaulted and waived for purposes of federal habeas review.

## V. GROUND TWO OF THE PETITION IS NOT COGNIZABLE.

Ground Two of the petition challenges petitioner's classification as a sexual predator. The trial court's classification of petitioner as a sexual predator does not result in him being "in custody" for purposes of federal habeas jurisdiction. The federal writ of habeas corpus is the appropriate remedy when a petitioner challenges "the very fact or duration of his physical imprisonment, and the relief he seeks is a determination that he is entitled to immediate release from that imprisonment."*Preiser v. Rodriguez,* 411 U.S. 475, 500 (1973). In other words, the person who is in custody is challenging the conviction or sentence which resulted in the unconstitutional "custody." *Id.*

"[T]he classification of a sex offender as a sexual predator is a collateral disability resulting from a conviction and thus does not satisfy the 'in custody' requirement of federal habeas corpus." *Thomas v. Morgan,* 109 F. Supp.2d 763, 767 (N.D. Ohio 2000). *See Leslie v. Randle,* 296 F.3d 518, 523 (6th Cir. 2002)(court lacked jurisdiction to grant relief on claim challenging petitioner's adjudication as a sexual predator under Ohio's civil sexual-predator registration statute because such classification is a "collateral consequence" of conviction and

does not constitute a "severe and immediate restraint on his liberty sufficient to satisfy the 'in custody' prerequisite for federal habeas corpus review"). While petitioner is certainly "in custody" by virtue of his conviction, petitioner is not "in custody" by virtue of the fact that he is classified as a sexually predator who must register with authorities upon his release from prison. *Leslie*, 296 F.3d at 523. Petitioner's designation as a sexually predator is a collateral consequence of his conviction and does not satisfy the "in custody" requirement for federal habeas corpus relief. *Id*. Therefore, the Court lacks jurisdiction to consider petitioner's classification as a sexual predator. *See Booker v. Anderson,* No. 1:06cv1080, 2007 WL 1731282, at *6 and n.8 (N.D. Ohio June 14, 2007) (and numerous cases cited therein). *See also Goodballet v. Mack,* 266 F. Supp.2d 702, 708 (N.D. Ohio 2003). Ground Two of the petition should be dismissed.

## IT IS THEREFORE RECOMMENDED THAT:

1. Petitioner's petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Doc. 1) should be DENIED with prejudice.

2. A certificate of appealability should not issue with respect to Ground One, part two of the petition which this Court has concluded is waived and thus barred from review on procedural grounds because under the applicable two-part standard enunciated in *Slack v. McDaniel,* 529 U.S. 473, 484-85 (2000), "jurists of reason would not find it debatable whether this Court is correct in its procedural ruling" as required under the first prong of the *Slack* standard.[4] A

---

[4] Because this Court finds that petitioner has not met the first prong of the *Slack* standard, it need not address the second prong of *Slack* as to whether "jurists of reason" would find it debatable whether petitioner stated a valid constitutional claim. *See Slack,* 529 U.S. at 484.

19

certificate of appealability should not issue with respect to any other claims alleged in the petition because petitioner has failed to make a substantial showing of the denial of a constitutional right based on the claims alleged therein. *See* 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b).

3. The Court should certify pursuant to 28 U.S.C. § 1915(a)(3) that an appeal of any Order adopting this Report and Recommendation would not be taken in "good faith" and, therefore, DENY petitioner leave to proceed on appeal *in forma pauperis* upon a showing of financial necessity. *See* Fed. R. App. P. 24(a); *Kincade v. Sparkman,* 117 F.3d 949, 952 (6th Cir. 1997).

Date: _____
KI

Timothy S. Hogan
United States Magistrate Judge

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

TIMOTHY SCHULER,
    Petitioner,

    vs.

STUART HUDSON,
WARDEN,
    Respondent.

Civil Action No. 1:08-cv-456

Barrett, J.
Hogan, M.J.

## NOTICE

Attached hereto is a Report and Recommendation issued by the Honorable Timothy S. Hogan, United States Magistrate Judge, in the above-entitled habeas corpus action. Pursuant to Fed. R. Civ. P. 72(b), which may be applied in this action under Rules 1 and 11 of the Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. foll. § 2254, any party may object to the Magistrate Judge's Report and Recommendation within ten (10) days after being served with a copy thereof. Such party shall file with the Clerk of Court and serve on all other parties written objections to the Report and Recommendation, specifically identifying the portion(s) of the proposed findings, recommendations, or report objected to, together with a memorandum of law setting forth the basis for such objection(s). Any response by an opposing party to the written objections shall be filed within ten (10) days after the opposing party has been served with the objections. *See* Fed. R. Civ. P. 72(b). A party's failure to make objections in accordance with the procedure outlined above may result in a forfeiture of his rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).